PONDER, Justice.
 

 This is a suit instituted by Eddie Rusillion, curator of Joseph Dalovisio, interdict, against Josephine Dalovisio Papania and Mrs. Tony ‘Monticello, the interdict’s sisters, to have a certain compromise agreement set aside and to be decreed the owner of certain buildings and equipment and for a moneyed judgment in the sum of $6,~ 223.33. In the alternative, in event the court should decree that the interdict’s estate is not the owner of the buildings and equipment, that he recover an additional sum of $2,990.36, the value of the buildings and improvements. After issue was joined the case was tried in the lower court resulting in a judgment rejecting the demands of the plaintiff. The plaintiff has appealed.
 

 Joseph Dalovisio was interdicted by judgment of court in the month of December, 1937. The compromise agreement complained of was entered into on July 1, 1937, before Joe J. Tritico, a notary public, and two witnesses. The other transac
 
 *107
 
 tions complained of transpired prior thereto. The principal controversy is over the compromise agreement. It is alleged in the plaintiff’s petition that at the time the transactions took place and continuously for several years prior thereto that Joe Dalovisio was mentally incapable of administering his estate and mentally incapable of making a contract which incapacity was notorious and generally known throughout the community and well known to the defendants.
 

 The sole question presented is whether or not the transactions of Joe Dalovisio prior to his interdiction should be annulled.
 

 Article 402, R.C.C., provides as follows:
 

 “No act anterior to the petition for the interdiction shall be annulled, except where it shall be proved that the cause of such interdiction notoriously existed at the time when the acts, the validity of which is contested, were made or done, or that the party who contracted, with the interdicted person, could not have been deceived as to the situation of his mind.
 

 “Notoriously, in this article, means that the cause of interdiction was generally known by the persons who saw and conversed with the party.”
 

 The preponderance of the testimony shows that Joe Dalovisio was engaged in the mercantile business and transacted all of his affairs prior to and at the time the compromise agreement was entered into. Twenty-three witnesses testified as to the mental condition of Joseph Dalovisio at the time of the agreement and prior thereto. Three of these witnesses were physicians. Two of the physicians’ testimony is to the effect that they had treated him prior to his interdiction but had not observed any action by him that would lead them to believe that he was insane. Three attorneys who had transactions with Joe Dalovisio during this period of time testified to the same effect. The testimony of the majority of the lay witnesses was to this effect also. One physician testified that for some time prior to the time the agreement was entered into that Dalovisio was not right and at the time he examined him in connection with the interdiction proceedings he was of unsound mind. Three of the lay witnesses testified that Dalovisio appeared to be worried prior to and at the time the agreement was entered into. Two of them testified that he had loaned them money during that time which he had forgotten until it was called to his attention. The defendants testified that they knew nothing of Dalovisio’s mental incapacity until he was interdicted. Under the evidence in this case it could not be said that the cause of interdiction was notoriously known or that the defendants could have been deceived as to the situation of his mind. In fact the preponderance of the evidence is to the contrary.
 

 From an examination of the evidence in this case and the compromise agreement, it does'not appear that any undue advantage was taken of Dalovisio. In fact, the agreement appears to be considerably to the advantage of him. Undoubtedly the store building erected on the land of the defendants was heavily involved. The compromise agreement shows that Dalovisio transferred the store building which he had
 
 *108
 
 erected on the property of Josephine Papania to her in consideration of her paying him $300; she assuming a $350 indebtedness due Calcasieu Marine National Bank; the return of merchandise seized under a prior suit; permitting Dalovisio to remain on the premises for tén days in order that he may find a suitable place to operate his business at which time he was to be permitted to remove all of his fixtures and merchandise as well as the garage building and barbecue pit located on the property; she also agreed to return twenty-four notes calling for $100 each given her by Dalovisio for rent of the premises; and she agreed to incur other outstanding indebtedness on the improvements due for lumber and material purchased from the Powell Lumber Company.
 

 We have arrived at the conclusion that the parties entered into the agreement in good faith and that Dalovisio accepted and received the benefits flowing from it. The preponderance of the testimony shows at the time the agreement was made that it was generally believed that Dalovisio was sane. He was transacting his business and affairs at that time in a usual manner. If he was insane, it certainly cannot be said that it was generally known by the preponderance of the testimony in this case. It appears that Josephine Papania acted in good faith in these transactions. In fact it appears from the testimony of the notary public, who is an attorney at law, that the compromise agreement was drawn up at the instance of Joseph Dalovisio.
 

 Under the circumstances in this case we have arrived at the conclusion that the judgment of the lower court is correct and should be affirmed.
 

 Judgment affirmed at appellants’ cost.